UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WANDA F. o/b/o T.F.,

                         Plaintiff,                    **DECISION AND ORDER**

            v.                                         6:20-CV-06813 EAW

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Wanda F. ("Plaintiff") brings this action on behalf of T.F., a minor child, pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for children's supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 12; Dkt. 13), and Plaintiff's reply (Dkt. 15).

For the reasons discussed below, the Commissioner's motion (Dkt. 13) is granted, and Plaintiff's motion (Dkt. 12) is denied.

## BACKGROUND

On April 23, 2014, Plaintiff protectively filed an application for SSI on behalf of T.F., a child under the age of 18. (Dkt. 13 at 134, 263-68).[1] Plaintiff alleged T.F.'s disability began on October 1, 2012. (*Id.* at 134, 263). Plaintiff's application was initially denied on July 8, 2014. (*Id.* at 134, 123-30). On August 12, 2016, Plaintiff and T.F. appeared at a hearing in Rochester, New York, before administrative law judge ("ALJ") Brian Kane. (*Id.* at 88-122). On December 27, 2016, the ALJ issued an unfavorable decision. (*Id.* at 134-147). Plaintiff requested Appeals Council review, and her request was granted on January 12, 2018. (*Id.* at 153-54). The Appeals Council entered an Order instructing the ALJ to offer Plaintiff the opportunity for a hearing, address the evidence submitted with the request for review, take any further action needed to complete the administrative record, and to issue a new decision. (*Id.* at 154). ALJ Kane held a second hearing on March 8, 2019. (*Id.* at 60-86). On April 24, 2019, the ALJ issued a second unfavorable decision. (*Id.* at 16-33). This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

*v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  An ALJ follows a three-step sequential evaluation to determine whether a child is entitled to SSI benefits.  *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009).  "First, the child must not be engaged in 'substantial gainful activity.' Second, the child 'must have a medically determinable impairment(s)' that is 'severe' in

that it causes 'more than minimal functional limitations.'  Third, the child's impairment or combination of impairments must medically or functionally equal an impairment listed in an appendix to the regulations."  *Id*. (quoting 20 C.F.R. § 416.924).

The limitations caused by a child's severe impairment are evaluated pursuant to six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself, and (6) health and physical well-being.  *See* 20 C.F.R. § 416.926a(b)(1).  "For a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.'"  *Encarnacion*, 568 F.3d at 75 (quoting 20 C.F.R. § 416.926a(a)).  "A marked limitation is more than moderate but less than extreme and interferes seriously with a child's ability to independently initiate, sustain, or complete activities.  An extreme limitation is more than marked and interferes very seriously with a child's ability to independently initiate, sustain, or complete activities."  *Id*. (internal quotations and citations omitted).

## DISCUSSION

## I.      The ALJ's Decision

In determining whether T.F. was disabled, the ALJ applied the three-step sequential evaluation set forth in 20 C.F.R. § 416.924.  Initially, the ALJ determined that T.F. was a school-age child on April 23, 2014, the date the application was filed, and was an adolescent on the date of the written determination.  (Dkt. 11 at 19).  At step one, the ALJ

determined that T.F. had not engaged in substantial gainful activity since April 23, 2014, the application date.  (*Id*.).

At step two, the ALJ found that T.F. suffered from the severe impairments of: major depressive disorder, anxiety disorder, attention deficit hyperactivity disorder (ADHD), and disruptive behavior disorder with oppositional defiant behavior/oppositional defiant disorder.  (*Id*.).

At step three, the ALJ found that T.F. did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id*. at 20). Similarly, the ALJ found that T.F. did not have an impairment or combination of impairments that functionally equaled the severity of the Listings.  (*Id*.).  In making this determination, the ALJ considered T.F.'s functioning in each of the above-mentioned six domains and concluded that T.F. had a marked limitation in the area of acquiring and using information, and less than marked limitations in attending and completing tasks, interacting and relating with others, caring for herself, and health and physical well-being.  The ALJ further found that T.F. had no limitation in moving about and manipulating objects.  (*Id.* at 26-32).  Accordingly, the ALJ found that T.F. was not disabled as defined in the Act.  (*Id*. at 33).

## II.    The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner for further proceedings, arguing that that ALJ erred in concluding that T.F. did not have marked limitations in the domains of interacting and relating with others and in caring for herself.  In support of these arguments, Plaintiff contends that the ALJ ignored

and mischaracterized critical evidence, including evidence indicating that T.F. engaged in risky online sexual behavior and self-injurious anxiety-related hair pulling, and that he made flawed conclusions about evidence of record.  The Commissioner contends that substantial evidence supports the ALJ's determinations.  For the reasons set forth below, the Court agrees with the Commissioner.

"An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  *Dana F. o/b/o O.E.H. v. Berryhill*, No 6:18-CV-1337 (ATB), 2019 WL 7067060, at *3 (N.D.N.Y. Dec. 23, 2019).  Further, while "[a]n ALJ is not required to explicitly analyze every piece of conflicting evidence in the record . . . the ALJ cannot 'pick and choose' evidence in the record that supports his conclusions."  *Id*. (internal quotations and citation omitted).  In the context of child disability proceedings, "[w]hen reviewing a child's impairments for functional equivalence, adjudicators must consider all of the relevant evidence, and employ a 'whole child' approach."  *Nivia D. o/b/o P.L.D. v. Comm'r of Soc. Sec.,* No. 5:18-cv-0634(TWD), 2019 WL 4573262, at *4 (N.D.N.Y. Sept. 20, 2019) (internal quotations and citation omitted).  This approach "requires the ALJ to consider a child's everyday activities, determine all domains involved in performing them, consider whether that child's medically determinable impairment accounts for limitations in activities, and determine what degree such impairment limits that child's ability to function age-appropriately in each domain."  *Id*.

As an initial matter, Plaintiff's arguments—that the evidence supports marked limitations in the domains of interacting and relating with others and caring for herself—

are based largely on her disagreement with how the ALJ weighed the evidence in finding less than marked limitations in these two domains. But it is not the function of this Court to re-weigh evidence or consider *de novo* whether T.F. is disabled. *See Urena v. Comm'r of Soc. Sec.*, 379 F. Supp. 3d 271, 278 (S.D.N.Y. 2019) ("Importantly, it is not a reviewing court's function to determine de novo whether [a claimant] is disabled." (alteration in original) (internal quotation and citation omitted)). Rather, "[a]bsent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance." *Russell v. Saul*, 448 F. Supp. 3d 170, 175 (D. Conn. 2020); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." (quotation and citation omitted)).

The Court has reviewed the ALJ's written determination, as well as the administrative record, and finds that the ALJ's determination is supported by substantial evidence. While the record supports that T.F. has some limitations in functioning— particularly with regard to acquiring and using information—the ALJ adequately explained how he arrived at his determination that T.F. has less than marked limitations in the domains of interacting and relating with others and caring for herself.

### A.    Interacting and Relating with Others

In assessing the domain of interacting and relating with others, the ALJ considers how well the child "initiate[s] and sustain[s] emotional connections with others, develop[s]

and use[s] the language of your community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." 20 C.F.R. § 416.926a. "The Regulations provide that children should be able to 'respond appropriately to a variety of emotional and behavioral cues [;] . . . speak intelligibly and fluently so that others can understand; . . . participate in verbal turntaking and nonverbal exchanges; consider others' feelings and points of view; follow social rules for interaction and conversation; and respond to others appropriately and meaningfully.'" *Royster o/b/o J.R.R. v. Comm'r of Soc. Sec*., No. 19-CV-01250, 2020 WL 7640934, at *4 (W.D.N.Y. Dec. 23, 2020) (quoting 20 C.F.R. § 416.926a(i)(1)(iii)).

As explained in the written determination, the ALJ relied specifically on the testimony of Plaintiff and T.F., opinions from T.F.'s teachers and medical providers, T.F.'s IEP, and T.F.'s treatment records in reaching his determination on this domain. Specifically, the ALJ stated:

> The evidence across the period at issue is split in this domain, and not supportive of a marked finding. At the hearings, [T.F.] and her mother testified to difficulties that [T.F.] had in her behavior and her problems in getting in fights with other students at school. Ms. Magnussen, and Dr. Brownfeld felt that there were more than moderate limits here, Ms. Singh was in the middle range, and Ms. Johnson, the Community Development Director, and Dr. Inman-Dundon found no or slight limits. [T.F.'s] treating sources uniformly found her to be cooperative and pleasant, and her IEP did not note significant interpersonal difficulty. [T.F.'s] mother complained of issues here at discrete points in the record, but there were also many times where [T.F.'s] difficulties were minor, or she was getting along well. [T.F.'s] oppositional behaviors seemed to be concentrated in the earlier part of the

record. On balance, while she has challenges here, the evidence does not show that they presented in a consistent or sustained manner.

(Dkt. 11 at 29).

As noted, the ALJ acknowledges that there was a range of opinions as to T.F.'s abilities in interacting and relating with others. Erica Magnussen, T.F.'s lead teacher for the school year at the time of the decision, opined that while T.F's social interactions had improved, she still struggled with anger and how to have productive conversations when upset. (*Id.* at 570). Ms. Magnussen identified "serious problems" for T.F. in expressing anger appropriately and asking permission appropriately, and "obvious problems" in making and keeping friends, seeking attention appropriately, following rules, respecting adults, using appropriate language, interpreting body language, and using adequate vocabulary. (*Id.*). Adam Brownfeld, Ph.D., a consultative psychiatric examiner, also indicated that T.F. had a poor relationship with adults, sibling, and peers and had low frustration tolerance. (*Id.* at 1020). He concluded that T.F. had a marked limitations in interacting and relating with others. (*Id.* at 1022). Teresa Singh, T.F.'s regular education teacher, completed the questionnaire, opining that T.F. had a "serious problem" playing cooperatively with other children, making and keeping friends, and seeking attention appropriately, but lower ratings for the ten other categories identified for this domain. (*Id.* at 308). Alternatively, Shannon Johnson, T.F.'s eighth-grade history teacher, indicated that T.F. had no more than slight problems with any of the thirteen activities relating to her limitations in interacting with others. (*Id.* at 530). The Community Development Director at T.F.'s school completed the same questionnaire and found a slight problem in T.F.'s expressing anger appropriately but did not identify any problem in the other areas

identified.  (*Id.* at 560).  Similarly, Dr. Inman-Dundon, a pediatric medical consultant, prepared a childhood disability evaluation and found that T.F. had less than marked limitations in interacting and relating to others.  (*Id.* at 127).  The ALJ explained that he gave some weight to Dr. Inman-Dundon's opinion, to the degree that it is supportive of the functional domain evaluations.  (*Id.* at 25).  T.F.'s therapist, Khadijah Tillman, also opined that Plaintiff had moderate limitations in interacting and relating with others.  (*Id.* at 1170). The ALJ explained that while T.F.'s teachers and administrators are not acceptable medical sources, he nevertheless considered their opinions because they have "first-hand knowledge of [T.F.'s] impairments and limitations in comparison to her age-appropriate peers" and "accorded them significant weight in support of the functional domain evaluations."  (*Id.*).

Plaintiff argues that the ALJ's determination ignores important evidence in the record and relies on flawed conclusions.  First, she argues that the ALJ's conclusion that T.F.'s oppositional behaviors were concentrated in the earlier part of the record overlooks evidence from the current school year showing T.F. had been suspended for fighting and sent out of class for being disruptive, as well as notations on her seventh-grade report card indicating that she was "often distracted and not following directions," that she had "frequent defiant and disruptive classroom behaviors," and was "very disrespectful to staff."  (*Id.* at 318, 508).  But contrary to Plaintiff's contentions, the ALJ's decision acknowledges Plaintiff's disciplinary issues and that she had been suspended for fighting. (*Id.* at 21 ("[T.F.] stated that she had recently been suspended for fighting, and was quick to anger, but got along with some people."); 24 ("According to the 2018-2019 IEP, [T.F.]

was a friendly and popular student who got along well with peers and adults.  I have considered this evidence along with contrary evidence that [T.F.] was suspended once for fighting and sent out of class twice over the course of the academic year for disruptive behavior.")).  Indeed, rather than overlooking the contrary evidence, the ALJ expressly recognized that there was evidence reflecting T.F.'s challenges in interacting and relating to others, but ultimately determined that the evidence overall did not demonstrate that the limitations presented in a consistent or sustained manner.  It is not for the Court to reweigh the evidence, as Plaintiff urges.  *See Cruz o/b/o M.M.W. v. Comm'r of Soc. Sec.*, No. 19CV9253(AT)(BCM), 2021 WL 4123969, at \*13 (S.D.N.Y. Aug. 25, 2021) ("However, the reviewing court's task is limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it may not reweigh that evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than one interpretation."), *report and recommendation adopted sub nom. Cruz v. Comm'r of Soc. Sec.*, No. 19CIV9253(AT)(BCM), 2021 WL 4124225 (S.D.N.Y. Sept. 9, 2021); *Z.J.F. by Conkling v. Comm'r of Soc. Sec.*, No. 6:16-CV-1397 (WBC), 2018 WL 1115516, at \*6 (N.D.N.Y. Feb. 27, 2018) ("Therefore, although Plaintiff cites to evidence which supported her contention that Claimant had behavioral problems, the ALJ ultimately concluded such problems were not as severe as alleged.  The ALJ cited substantial evidence in the record to support his determination and therefore the ALJ's assessment of the evidence is upheld.").

Next Plaintiff argues that the ALJ completely ignored evidence that in February 2017, T.F. was "writing inappropriate texts to girls that were about kissing," and in

February 2018, had been caught "sending a nude picture of herself to a boy via text message." (Dkt. 11 at 785, 988). She contends that to the extent that the ALJ did address the incidents, his description of the February 2018 incident was misleading. Specifically, the ALJ wrote, "[T.F.] had some friction at home after her mother confiscated her phone in February 2018, but she was 'doing better' in March 2018, with only minor issues with her brother, and an easier time focusing in school without the distraction of her phone." (*Id.* at 23). As an initial matter, any suggestion that the evidence was wholly overlooked by the ALJ is unconvincing where the ALJ specifically referenced Plaintiff's phone being taken in February 2018, which the record reflects was a result of the texting. (*Id.* at 984). Further, the Court disagrees that the ALJ's description of the incidents is misleading or deceptive, as Plaintiff contends. Finally, as a fundamental matter, of course, the ALJ is not required to discuss every piece of evidence in the record. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." (quotation and citation omitted)); *Karleigh J.T. v. Kijakazi*, No. 1:20-CV-1086 (GTS), 2022 WL 539436, at *9 (N.D.N.Y. Feb. 23, 2022) ("Importantly, while the Court notes that an ALJ must fully develop the record, there is no such requirement that the ALJ need discuss every piece of evidence that is contained within it."). Accordingly, the Court finds no error in the ALJ's discussion of T.F.'s allegedly inappropriate texting.

Accordingly, contrary to Plaintiff's contentions, this is not a circumstance where an ALJ engaged in impermissible cherry picking and highlighted only evidence supporting his findings. *Goins o/b/o J.D.G. v. Berryhill*, No. 6:16-CV-06398-MAT, 2017 WL

5019273, at *4 (W.D.N.Y. Nov. 3, 2017) ("In evaluating the domains of functioning, ALJs may not 'cherry pick' evidence by "crediting evidence that supports administrative findings while ignoring conflicting evidence from the same source." (quotation and citation omitted)).  Instead, the ALJ acknowledged evidence that supported Plaintiff's allegations of disability, but ultimately concluded that she had a less than marked limitation in interacting and relating with others.  The Court cannot conclude on the present record that his finding was not supported by substantial evidence or that he ignored critical evidence in making the finding.  *Cruz o/b/o AET v. Saul*, No. 20CIV1045(CS)(JCM), 2021 WL 3375614, at *10 (S.D.N.Y. June 30, 2021) ("Furthermore, where the record evidence supports disparate findings, the ALJ's resolution of the conflicting evidence controls."), *report and recommendation adopted* (July 19, 2021).  Therefore, remand is not required on this basis.

    **B.    Caring for Herself**

    In assessing the domain of caring for oneself, the ALJ must "consider how well [the child] maintain[s] a healthy emotional and physical state, including how well [the child] get[s] [his or her] physical and emotional wants and needs met in appropriate ways; how [the child] cope[s] with stress and changes in [his or her] environment; and whether [the child] take[s] care of [his or her] own health, possessions, and living area."  20 C.F.R. § 416.926a(k).  This includes consideration of the child's ability to regulate him or herself and the ability to respond to changes in emotions as well as to the daily demands of his or her environment to take care of one's personal needs, health, and safety.  *Jenia W. o/b/o L.J.R. v. Comm'r of Soc. Sec.*, No. 20-CV-01303, 2022 WL 507345, at *4 (W.D.N.Y. Feb.

- 13 -

18, 2022). "[T]his domain focuses on how well a child relates to herself by maintaining a healthy emotional and physical state in ways that are age-appropriate and in comparison to other same-age children who do not have impairments." *Maria E. o/b/o J.M.A. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1337 (WBC), 2021 WL 3861422, at *3 (W.D.N.Y. Aug. 30, 2021).

In analyzing this domain with respect to T.F., the ALJ stated:

At hearing, [T.F.'s] mother testified that she sometimes had to force or assist [T.F.] in performing some of her basic hygiene activities. Ms. Singh found only two areas where she rated the claimant as having a serious problem. Particularly, these areas where in [T.F.'s] ability to handle frustration appropriately, and the ability to be patient when necessary. Slight or no problems were otherwise noted, and all other opining practitioners felt that difficulties here were more minimal. [T.F.] seems to be better able to modulate herself as she has gotten older, and her IEP notes that she is able to adequately express frustration to adults, and seek help as needed. There is evidence that [T.F.'s] anxiety feeds into her hair pulling, but the records show only some thinning, and not alopecia. She eats and sleeps well, has plans to teach yoga when she graduates, and is mindful of her academic challenges, with expressed intention that she wants to improve. A marked limit in this domain is not supported.

(Dkt. 11 at 32).

As noted, the ALJ cites to Ms. Singh's evaluation of ten areas of T.F's limitations in caring for herself and only indicated a serious problem in handling frustrating and being patient. (*Id.* at 310). Ms. Singh identified calming oneself and using appropriate coping skills to be an obvious problem for T.F., with the other areas being only a slight problem or no problem. (*Id.*). Other evidence highlighted by the ALJ in his decision was the opinion of Ms. Johnson, who opined that T.F. had no problems in caring for herself (*id.* at 532), Ms. Magnussen who opined the same (*id.* at 572), and the Director of Family and Community Development who indicated a slight problem for T.F. in handling frustration

but no problem in any of the other areas of this domain (*id.* at 562).  Dr. Inman-Dundon similarly opined that Plaintiff had no limitations in caring for herself.  (*Id.* at 127).  T.F.'s therapist, Ms. Tillman, opined that T.F. had moderate limitations in caring for herself.  (*Id.* at 1170).

Notwithstanding the foregoing opinion evidence relied upon by the ALJ in his decision and supporting his determination of this domain, Plaintiff argues again that the ALJ should have found a marked limitation in T.F.'s ability to care for herself based on the aforementioned social behavior of sending inappropriate text messages.  Not only is there no evidence that the text messages were a symptom of her disability and not age-appropriate in comparison to other same-age children who do not have impairments, but as previously discussed, the ALJ did mention the incident so it cannot fairly be said that the incidents were not considered.  Moreover, as discussed, the ALJ is not required to address each piece of evidence in the record in detail.  *Cruz*, 2021 WL 3375614, at *13 ("The ALJ's reasoning is sufficiently specific for the Court to conduct a substantial evidence review. As discussed, *supra*, the ALJ need not articulate their evaluation of each item of evidence to meet the substantial evidence standard." (quotation and citation omitted)).  The Court declines any request to reweigh the evidence.

Plaintiff also argues that the ALJ minimizes T.F.'s hair pulling by his noting that the records show only some thinning of her hair and not alopecia.  She argues that the record shows hair loss, not hair thinning, and that the hair loss is linked to her anxiety.  But the ALJ expressly acknowledged that Plaintiff's hair pulling was related to her anxiety and cited to records demonstrating hair pulling in the decision.  (Dkt. 11 at 21 ("[Plaintiff]

stated that, at times, she has had to force her daughter to maintain some personal hygiene tasks, and she was concerned that her daughter had problems with pulling her hair"); 22 (noting a June 2015 mental status examination record showing "evidence of mild hair loss and a dry patch on [T.F.'s] scalp during this time period but [T.F.] was in generally good health"); 23 (noting Ms. Tillman's records from early 2019 reflect "less hair pulling in recent months")). Plaintiff argues that regardless of whether the record shows hair thinning or hair loss, the ALJ was required to consider the condition in connection with the domain of caring for herself because it reflects an inappropriate way to manage stress. The ALJ's decision makes clear that he did consider T.F.'s hair pulling in connection with this domain and concluded, like the other opinions in the record, that it did not rise to a marked limitation. He noted that her hair pulling had decreased and the fact that the evidence is susceptible to more than one rational interpretation does not demonstrate that the ALJ's determination was error. The record is clear as to what the ALJ considered in making his determination and accordingly, remand is not warranted on this basis. *Nicole A. o/b/o J.D.J.W. v. Comm'r of Soc. Sec.*, No. 19-CV-1654L, 2021 WL 916016, at *4 (W.D.N.Y. Mar. 10, 2021) ("Where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why [she] considered particular evidence unpersuasive or insufficient to lead [her] to a conclusion of disability.'" (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 13) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 12) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  March 25, 2022
        Rochester, New York

- 17 -